**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SYRRIA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION,<br><br>Defendant. | Case No. 17-CV-6071<br><br>Judge Robert W. Gettleman |

**MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE PARTIES'
CLASS AND COLLECTIVE ACTION SETTLEMENT**

Plaintiff, Syrria Williams ("Named Plaintiff"), individually and on behalf of all others similarly situated, for her memorandum in support of final approval of the Parties' Class and Collective Action Settlement, states as follows:

**I.       Introduction**

This Court granted preliminary approval of the Parties' Collective and Class Action Settlement Agreement (the "Settlement Agreement") on July 24, 2018 (ECF No. 42), and Plaintiff now seeks final approval of the Settlement. Under the settlement, there are 172 Illinois Employees[1] (i.e., potential members of the "Class") and 170 Nationwide Employees (i.e., potential members of the "Collective").[2] Pursuant to the Court's preliminary approval Order, the Settlement

---

[1] All capitalized terms used herein correspond with the same terms used in the Parties' Settlement Agreement. *See* ECF No. 39-1.

[2] As set forth in Plaintiff's Unopposed Motion to Approve Additional Settlement (ECF No. 44), the Parties identified an additional 79 individuals that should have been included in Defendant's production of data to Plaintiff's counsel and the Settlement Administrator, but were inadvertently omitted. *Id.* ¶ 6. If the Court grants the Motion, the Parties will treat the 79 individuals as Nationwide Employees, bringing the total number of Nationwide Employees to 249, subject to Defendant's additional contribution of $17,254.66 to the Qualified Settlement Fund established for this Settlement. *Id.* ¶¶ 7-8.

1

Administrator issued the Court-approved notice and opt-out form to the 172 Illinois Employees. The notice period has now expired, without any significant issues arising.

This Court should grant final approval because the Settlement far exceeds the required class settlement standard: out of the 172 Illinois Employees, only one filed a request for exclusion from the Settlement, and none objected to the Settlement. Neither the Illinois Employees nor the Nationwide Employees are required to submit a Claim Form in order to participate in the Settlement. They will receive a settlement check in the amount of their gross estimated settlement award if the Court grants Plaintiff's motion for final approval.[3] The Settlement provides an outstanding result for the Class and Collective Members.

Final approval of a class action settlement is appropriate where the court determines that a settlement is fair, adequate, and reasonable. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2005). The results achieved on behalf of the Class and Collective in this case comfortably meet this standard. Accordingly, Plaintiff requests that the Court enter the proposed Final Approval and Dismissal Order attached hereto as Exhibit 1.

## II.   Statement of Facts

### A. Factual and Procedural Background

As set forth in Plaintiff's Unopposed Motion for Preliminary Approval, on August 21, 2017, the Named Plaintiff filed this Action in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of herself and others similarly situated, alleging

---

[3] On July 24, 2018, this Court also granted Plaintiff's Motion for Preliminary Approval of the Parties' Collective Action Fair Labor Standards Act Settlement (ECF No. 42) (the persons eligible for a settlement under the FLSA and who worked outside Illinois are referred to as Nationwide Employees). Pursuant to the terms of that portion of the Settlement, settlement checks will be mailed to the Nationwide Employees following final approval. Those Employees will then have the opportunity to participate in the Settlement by cashing their checks, and if they do not wish to participate, they need do nothing. Any Nationwide Employee who does not cash a settlement check will not release any claims against Defendant.

that Defendant failed to pay her and other similarly situated employees in accordance with the Fair Labor Standards Act, 29 U.S.C. 201 *et seq*. (the "FLSA") (Count I), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. (the "IMWL") (Count II), and the Illinois Wage Payment Collection Act, 820 ILCS 115/1 *et seq*. (the "IWPCA") (Count III). Specifically, the Named Plaintiff alleged that Defendant required or permitted the Named Plaintiff, who worked as a telephone-dedicated employee, and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, completing customer service calls, closing down software programs, and logging off the system after the end of their scheduled shift times. The Named Plaintiff also alleged that Defendant required or permitted the Named Plaintiff and similarly situated employees to perform unpaid work for Defendant on their break periods, including meal breaks.

On October 10, 2017, Defendant filed a motion to dismiss Plaintiff's IWPCA claim (Count III of the Complaint). The Parties subsequently agreed that Plaintiff would voluntarily withdraw her IWPCA claim without prejudice. (ECF No. 18).

On October 10, 2017, Defendant filed its Answer to Named Plaintiff's Complaint, denying all material allegations set forth in the Action and asserting certain affirmative defenses. Defendant continues to deny any liability or wrongdoing of any kind associated with the claims alleged by the Named Plaintiff in the Action. Specifically, Defendant denies that its pay practices failed to comply with the FLSA, the IMWL, the IWPCA, or any other federal or state law, or that class and/or collective action treatment of Named Plaintiff's claims would be appropriate outside of this Settlement.

The Parties actively engaged in extensive formal and informal discovery, and Defendant produced class- and collective-wide data and information regarding the claims, including (i) payroll data and information for Named Plaintiff and the putative class and collective members; (ii) the number of workweeks worked by the putative class and collective during the recovery period; (iii) log in and out data and timesheets relating to Named Plaintiff during the duration of her employment; and (iv) Defendant's employee handbooks, operating procedures, and related documents, used during the class period.

In approximately January 2018, the Parties began discussing a resolution of this matter. In April 2018, the Parties reached an agreement in principle on the terms of a class and collective action settlement to settle the claims alleged in the Complaint as to the Named Plaintiff and the putative class and collective members. Ultimately, the Parties reached an agreement regarding the parameters of a settlement of this matter.

### B. The Court's Preliminary Approval Order

On July 18, 2018, Plaintiff filed her Motion for Preliminary Approval of the Parties' Proposed Class and Collective Action Settlement. (ECF No. 40). On July 24, 2018, the Court granted preliminary approval of the Parties' proposed settlement ("Preliminary Approval Order") and scheduled a final settlement fairness hearing for November 15, 2018 at 9:30 a.m. (ECF No. 42).

After entry of the Preliminary Approval Order, pursuant to the terms of the Settlement Agreement, on August 17, 2018, the Settlement Administrator issued and mailed notice to the 171 Illinois Employees by the means approved by the Court and agreed to by the Parties in the

Settlement Agreement. (Ex. 2, Analytics Decl., ¶ 10).[4]  As required by the Settlement Agreement, the Class Notice informed Illinois Employees of: their right to participate in the Settlement and receive their individual Settlement Payment; their ability to learn more detailed information by contacting the Settlement Administrator and/or Class Counsel; and their right to object to or exclude themselves from the Settlement.

Prior to mailing the notice, the claims administrator ran the last known address of the 171 Illinois Employees (and 170 Nationwide Employees) through the National Change of Address database. (*Id.*, ¶¶ 7-8).  As a result of the August 17, 2018, mailing, 20 Notices were returned to Analytics as undeliverable by the Post Office. (*Id.*, ¶ 11).  Analytics ran skip traces for Illinois Employees whose Notices were returned as undeliverable in a further attempt to locate these individuals. (*Id.*).  Analytics located 16 updated addresses and they were re-mailed promptly. (*Id.*).  Additionally, three Notices were forwarded. (*Id.*).  The deadline to submit an objection or request exclusion from the Settlement was October 16, 2018.  Only one Illinois Employee requested exclusion from the Settlement, and none objected to the Settlement. (*Id.* at ¶¶ 17, 19).

### III.     Plaintiff Has Satisfied the Requisite Notice Requirements

The notice protocol provided by the Settlement Agreement fully comports with the Federal Rules and due process.  Rule 23(c)(2)(B) requires the Court to direct to class members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.*  Where the names and addresses of the class

---

[4] On October 2, 2018, the Settlement Administrator issued and mailed notice to one additional Illinois Employee who was inadvertently omitted from the original mailing and affirmatively requested inclusion in the Settlement. (Ex. 2, ¶¶ 12-14).

members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175.

The Settlement Administrator has fully performed all of its obligations and the Parties have complied with all terms of this Court's Preliminary Approval Order. Specifically, on August 17, 2018, the Settlement Administrator mailed the Class Notice to 171 Illinois Employees. (*Id.*, at ¶ 10). Before mailing the Class Notice, the Settlement Administrator processed and updated the addresses using the National Change of Address Database maintained by the United States Postal Service. (*Id*. at ¶¶ 7, 8). If a Class Notice was undeliverable and returned to the Settlement Administrator with a change of address notice, the Settlement Administrator re-mailed the Class Notice to the updated address. (*Id*. at ¶ 11). Regarding those Class Notices that were returned to the Settlement Administrator without a change of address notice, the Settlement Administrator performed advanced searches, known as "skip tracing," using the Illinois Employees' names and previous addresses in its attempt to locate current addresses. (*Id*.). If a new address was found, the Settlement Administrator re-mailed the Class Notice. (*Id*.). Thus, the Parties' and the Settlement Administrator's efforts to effectuate notice to the Illinois Employees met the requirements of Rule 23(c)(2)(B), and comported with due process.

### IV. The Court Should Finally Approve the Settlement Because it is Fair, Reasonable, and Adequate

Settlement of class action litigation is favored by federal courts, particularly in complex class actions. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *American International Group, Inc. v. ACE INA Holdings, Inc*., 2012 U.S. Dist. LEXIS 25265 (N.D.Ill., Feb. 28, 2012) (Gettleman, J.). To approve a proposed settlement of a class action under Rule 23, the Court must find that the proposed settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel*, 463 F.3d at 652. Courts in the Seventh Circuit view the facts in the light most favorable

to the settlement. *Isby*, 75 F.3d at 1199. Further, a court should not substitute its own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *Armstrong v. Bd. Of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980). In making its determination, a court must consider the following factors: (1) the strength of plaintiff's case compared with the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653.

Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arms-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F.Supp. 1130, 1149, n. 6 (N.D.Ill. 1997). When evaluated under these factors, the Parties' Settlement is fair, adequate, and reasonable.

      A. Final Approval of the Settlement is Warranted Based on the Strength of Plaintiff's Case as Compared to the Value of the Settlement, and Allocation of the Settlement <u>Payment is Reasonable</u>

The most important consideration is the strength of the plaintiff's case compared to the value of the settlement. *Synfuel*, 463 F.3d at 653. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiff's claims. *Id*.

Should this litigation continue, there are a range of possible outcomes including ones far less favorable to Plaintiff and the Class (and Collective) Members, including the very real prospect

7

that they might receive nothing at all. Indeed, significant litigation risks remain in obtaining class or collective action certification in this matter (as the matter was certified for settlement purposes only), proving liability, and establishing damages, and aspects of the case could be subject to ultimate rejection. *Bona fide* disputes exist as to whether Plaintiff, the Class Members, and the Collective Members were compensated in accordance with Illinois and federal wage laws, as well as the nature and extent of their potential damages. Thus, as in any complex action, the Plaintiff generally faced uncertainties. *See West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement…." *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). This case is no different in that, prior to beginning negotiations, there was a range of potential settlements that would have been reasonable.

The Settlement provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial."). Each Class Member's (and Collective Member's) settlement payment was calculated pursuant to the formula set forth in the Settlement Agreement and is based on the number of weeks the Class Member (or Collective Member) worked for Defendant in a certain telephone-dedicated position during the Class Period. Each Class (and Collective) Member will receive approximately $6.46 for each such week worked during the relevant period. For example,

a Class (or Collective) Member who worked 50 full time weeks during the period of November 1, 2014 through March 15, 2018 will receive approximately $323.00 under the settlement. A Class (or Collective) Member who worked 100 full time weeks during the period of November 1, 2014 through March 15, 2018 will receive approximately $646.00 under the settlement. Thus, the Settlement ensures that all Class (and Collective) Members will receive reasonable monetary relief. Consequently, this factor supports a finding that the Settlement is fair, adequate, and reasonable.

### B. Final Approval of the Settlement is Warranted in Light of the Likely Increase in the Complexity, Length, and Expense of Further Litigation

Avoiding the delay and risk of protracted litigation is another reason counsel frequently recommends, and thus courts approve, settlements. *See, e.g., Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration of the litigation); *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977). This consideration applies with full force to this case.

Further litigation would require the risk, time and expense associated with a motion for class and/or collective certification, trial, and possible appeals. Trial of this action alone would consume several weeks and require the expenditure of hundreds of thousands of dollars in additional costs and attorney time. As such, the costs of further litigation become considerable in terms of both time and money with uncertain results. Under these circumstances, the benefits of a guaranteed recovery today, rather than an uncertain result years in the future, are readily apparent.

### C. There is No Opposition to the Settlement

No Illinois Employee objected to the Settlement, and only one Illinois Employee excluded himself from the Settlement. The lack of objectors and minimal number of exclusions indicates

support for the Settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F.Supp.2d 816, 819 (N.D.Ill. 2002). The fact that "99.9% of class members have neither opted-out nor filed objections to the proposed settlements… [is] strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1020-21 (N.D.Ill. 2000). If a member of the Collective does not wish to participate in the settlement, then s/he simply does not have to cash the settlement check and no claims will be released.

### D. The Opinion of Competent and Experienced Counsel Favors Final Settlement

Where Class Counsel are qualified, courts heavily rely on their opinion that the settlement is fair, reasonable, and adequate, especially where discovery and settlement negotiations are thorough and extensive. *See Isby*, 75 F.3d at 1200. Here, Class Counsel, who are experienced and knowledgeable in wage and hour class action litigation, are intimately familiar with the strengths and weaknesses of this case. (Ex. 3, Ryan Decl., at ¶¶ 7-15). Based on their extensive vetting of the legal and factual issues in the face of vigorous opposition by Defendant, it is Class Counsel's judgment that the Settlement is fair, reasonable, and adequate. (*Id.* at ¶ 17). Class Counsel reached their opinion based on their experience, an intimate knowledge of the facts and the legal issues in this case, and a comprehensive analysis of the strengths, weaknesses and value of the claims and defenses balanced against the risks, time, costs and expense of further protracted litigation and appeals. (*Id.*, at ¶¶ 11-17, 19).

### E. The Stage of Proceedings and Discovery Completed Heavily Weigh in Favor of Final Approval of the Settlement

This complex putative class and collective action was resolved only after nearly one year of Class Counsel conducting extensive research, data analysis, and discovery. Thus, the stage of litigation has advanced to a state that Class Counsel could and have fairly and fully evaluated the

merits of the case, potential damages, and the probable course of the litigation absent settlement. (*Id*. at ¶ 15). As a result, the Parties negotiated the Settlement with detailed knowledge regarding the strengths and weaknesses of the case and the benefits of the Settlement.

    F.   The Settlement Was the Result of Arms-Length Negotiations, Without Any Hint of Collusion

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached only after the Parties conducted sufficient discovery, and after substantial and arms-length negotiations between the Parties. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> * * *
>
> The initial presumption of fairness of a class settlement may be established by showing:
>
> a. That the settlement has been arrived at by arm's-length bargaining;
>
> b. That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and
>
> c. That the proponents of the settlement are counsel experienced in similar litigation.

5 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 11-88, 11-91 (4th ed. 2002). In this case, as explained above, the terms of the Settlement were reached during extensive arms-length negotiations by experienced counsel after thorough investigation and analysis, and the terms of the Settlement were reached only weeks of negotiations. The foregoing demonstrates that the proposed Settlement is fair and reasonable.

    **V.**   **Class Counsels' Request for Attorneys' Fees and Costs Are Warranted by the Outstanding Result**

        A.  Class Counsels' Request for Attorneys' Fees and Costs Is Reasonable

11

The FLSA and IMWL provide that reasonable attorneys' fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); 820 ILCS § 105/12(a) ("If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court….").

When fee-shifting statutes such as the FLSA and the IMWL are involved, parties may negotiate settlements that encompass a defendant's total liability for damages, attorney fees, and costs. *See Evans v. Jeff D.*, 475 U.S. 717, 733-34, 738 n. 30 (1986); *see also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorney's fees."); Newberg, at § 15:32. Here, Defendant has agreed not to oppose Class Counsels' request for fees in an amount up to One Hundred Twelve Thousand Five Hundred Dollars ($112,500.00), and litigation costs in the amount of Seven Hundred Eighty-Seven Dollars and Fifty Cents ($787.50). (Ex. 3, Ryan Decl., at ¶ 20).

Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33% to 40% in comparable litigation. *See Gaskill v.Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (upholding award of 38% of common fund, and stating that "The typical contingent fee is between 33 and 40 percent…."); *see also Meyenberg v. Exxon*

*Mobil Corp.*, 2006 U.S. Dist. LEXIS 52962 at *5 (S.D.Ill., July 31, 2006) (Wilkerson, J.) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentage in this legal marketplace for comparable commercial litigation.").

Plaintiff's counsel here seek a fee of 37.5 percent of the common fund, which is reasonable and in accordance with the fees awarded in the case law set forth above, and is consistent with the standard contingent fee percentage in the legal marketplace for comparable cases. *See Gaskill*, 160 F.3d at 362; *Meyenberg*, 2006 U.S. Dist. LEXIS 52962 at *5. In wage and hour litigation – like this case – fee awards of between thirty-three and forty percent are traditional in common fund cases. *Id*. Notably, Plaintiff's counsel have recently been awarded attorneys' fees and costs in the amount of forty percent (40%) of the common fund obtained for the class. *See Williams-Green v. J. Alexander's Restaurants, Inc*., No. 09-cv-5707, Doc. No. 138 (N.D. Ill., Dec. 21, 2012), (Cole, J.); *Chambers v. Chase*, No. 11 cv 6014, Doc. No. 73 (N.D. Ill., Aug. 14, 2013) (Keys, J.); *Nimely v. Randstad General Partners (US), LLC*, No. 12-cv-10431, Doc. No. 85 (N.D.Ill. Mar. 25, 2014) (Bucklo, J.); *Williams v. Illinois Title Loans, Inc*., 13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014) (Kennedy, J.). Accordingly, Plaintiff requests that this Court award Class Counsel attorneys' fees in the amount of $112,500.00 and costs in the amount of $787.50. This request is well-within the market rate and facially reasonable. Moreover, awarding that percentage of the fund to Class Counsel in no way reduces the amounts to be paid to each of the Class Members.

  B. Plaintiff's Request is Warranted by the Benefit Conferred on the Class, the Results, and the Risks Taken by Class Counsel

Plaintiff's attorneys' fee request is also warranted in light of the significant and immediate financial benefit to the Class (and Collective) Members, not one of whom objected to the request. Class Members will receive substantial relief without having to provide or respond to written discovery, without having to sit for depositions, or go through a trial in which they would have to

13

prevail on liability in the face of Defendant's defenses. The Parties' settlement provides immediate benefit to the Class Members, avoiding the expense, risks, defenses and delays of certification briefing, trial and appeals. These results were only achieved after Class Counsel spent significant time developing and prosecuting this case.

In addition, Class Members (and Collective Members) are not required to sign general releases to participate in the Settlement; instead, their release was limited to unpaid wage claims only. The absence of a general release further exemplifies the excellent results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (noting the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Further, Class Counsel assumed a substantial risk of non-payment given the difficult and complex issues of law and fact that required sophisticated examination and analysis. These tasks were performed at a high level, without compensation and with the risk of no compensation. The prosecution of this action consumed the attention and time of Class Counsel, sometimes to the total exclusion of other matters. Finally, Plaintiff's outstanding result serves the purpose of the FLSA and the IMWL by vindicating rights these statutes were enacted to protect. Accordingly, based on the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, and the uncertainty of recovery and the results obtained, Class Counsel request this Court to grant their unopposed request for attorneys' fees and costs in the amount of $113,287.50.

### VI. An Incentive Award to the Named Plaintiff Is Warranted by the Outstanding Result

In her Motion for Preliminary Approval, Plaintiff informed the Court of her intention to seek an Incentive Award for herself, to acknowledge her risk, service, time expended, and

substantial benefits to the class. Doc. No. 67, pp. 14-15. The Class Notice advised that Named Plaintiff would request that the amount of $7,500.00 be paid to her. No Class Member objected to the Incentive Award requested.

"Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthoid Marketing Litigation*, 264 F.3d 712, 722-23 (7th Cir. 2001). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts have approved incentive awards as high as $20,000 per named plaintiff. *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819 at *7 (S.D. Ill., Jan. 22, 2004); *Schmidt v. Smith & Wollensky LLC,* Case No. 09-2752 (N.D. Ill.) (Dkt. #78, ¶ 5) (awarding $10,000 incentive award in Illinois Minimum Wage Law case); *Chesemore v. Alliance Holdings*, No. 09 cv 413, 2014 WL 4415919, *5, *12 (W.D. WIs. Sept. 5, 2014)($10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions; noting that courts in the Seventh Circuit routinely approve incentive awards ranging from $5,000 to $25,000); *see also Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, *5-6 (S.D. Ohio May 24, 2013) (recognizing that class members benefited from the class representative's contributions to litigation, and approving a service award of $12,500 when other class members' recovery would range from $260 to $1,000 and the gross settlement fund was $452,380).[5]

---

[5] *See, e.g. Beesley v. Int'l Paper Co.*, No. 06 cv 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers also carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

The Named Plaintiff's role in this litigation was crucial. She sacrificed a substantial amount of time and effort to prosecute this lawsuit on behalf of her fellow former employees. She met, conferred, and regularly corresponded with her counsel, remained involved in the settlement negotiations, and reviewed the settlement documents. (Ex. 3, at ¶ 18). Accordingly, Named Plaintiff requests that this Court grant her request for an Incentive Award in the amount of $7,500.00, as such payment is fair and reasonable.

### VII. Conclusion

For the reasons set forth above, the Parties respectfully request that the Court: (1) grant final approval of the Settlement Agreement; (2) find the Settlement fair, reasonable, adequate, and in the best interests of the Class and Collective Members; (3) approve Class Counsel's application for an award of attorneys' fees and costs; (4) approve the Incentive Award to the Named Plaintiff; and (5) enter the Final Approval and Dismissal Order to dismiss this Lawsuit.

Dated: November 6, 2018  Respectfully submitted,

/s/ Thomas M. Ryan
One of Plaintiff's attorneys

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400

## **CERTIFICATE OF SERVICE**

I, Thomas M. Ryan, an attorney, hereby certify that on November 6, 2018, a copy of the foregoing **Motion for Final Approval of the Parties' Class and Collective Action Settlement and the Memorandum in Support Thereof** were filed through the Court's CM/ECF electronic filing system, which will transmit notice of such filing to all counsel of record for Defendant:

Sari M. Alamuddin
James P. Looby
Kevin F. Gaffney
Morgan, Lewis, & Bockius, LLP
77W. Wacker Drive, Suite 500
Chicago, Illinois 60654
(312) 324-1000
salamuddin@morganlewis.com
james.looby@morganlewis.com
kgaffney@morganlewis.com

/s/ *Thomas M. Ryan*
Thomas M. Ryan